123 So.2d 138

**ALABAMA FARM BUREAU MUTUAL
CASUALTY INSURANCE COM-
PANY, Inc.**

**v.**

**Robert MILLS et al.**

**6 Div. 386.**

Supreme Court of Alabama.

Sept. 8, 1960.

Dominick & Roberts and James L. Shores, Tuscaloosa, for appellant.

Joe G. Burns and Robt. V. Wooldridge, Jr., Tuscaloosa, for appellees Robert Mills and Charlotte Mills.

J. Monroe Ward, Tuscaloosa, for appellee Roy Leland Mills.

GOODWYN, Justice.

This is the second appeal in this case. The first appeal, reported as Alabama Farm Bureau Mutual Casualty Insurance Co. v. Mills, 266 Ala. 681, 98 So.2d 48, was from a decree of the circuit court of Tuscaloosa County, in equity, sustaining respondents' (appellees') demurrers to the bill for declaratory judgment. We reversed, holding that the bill presented a justiciable controversy appropriate for declaratory relief. On remandment, the respondents-appellees answered the bill and a hearing was had on the merits. The evidence included oral testimony, depositions and a stipulation. The trial court rendered a decree denying the relief sought by the bill. The complainant insurance company brings this appeal from that decree.

The material facts are as follows:

The insurance company issued a policy of automobile liability insurance to Roy R. Mills covering the operation of a 1950 Dodge, "subject to the limits of liability, exclusions, conditions and other terms" of

the policy. Conditions 2, 5, and 12 of the policy are as follows:

"2. Notice of Accident—Coverages A [Bodily Injury Liability], B [Property Damage Liability] and C [Medical Payments]. When an accident occurs written notice shall be given by or on behalf of the insured to the Company *as soon as practicable. Such notice shall contain* particulars sufficient to identify the insured and also *reasonably obtainable information respecting the time, place and circumstances of the accident*, the names and addresses of the injured and of available witnesses." [Emphasis supplied.]

"5. Action Against Company—Coverages A, B, and C. No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor, under Coverages A and B, until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company, nor under Coverage C until the required proofs of claim have been filed with the Company.

\* \* \* \* \* \*

"12. Assistance and Cooperation of the Insured. The insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. \* \* \*"

The insured is thus defined in the policy:

"Definition of Insured. With respect to the insurance afforded for liability, the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

The automobile covered by the policy was involved in an accident on February 18, 1956. It was being driven by Roy Leland Mills, one of the respondents below, who was 16 years of age and the son of Roy R. Mills. There appears to be no dispute that the son was driving the car with the father's permission, thus making the son an "insured" within the terms of the policy. At the time of the accident, two young ladies, each 16 years of age, were passengers in the car. One of the girls, Charlotte Mills, was a respondent below and is an appellee here.

On February 20, 1956, both the father and son went to the insurance company's office in Tuscaloosa. The son reported that he had been involved in an accident while driving the insured automobile. An employee of the company then prepared a report of the accident which was read and signed by the son. In the report the son related that at the time of the accident he was driving along a muddy and slippery country road; that he was traveling at a speed of from 30 to 35 miles per hour; that, while going down an incline, the left front tire blew out, causing him to lose control of the automobile, which continued on for a distance of about 40 yards before coming to a stop with its rear wheel in a ditch; that Charlotte Mills and Helen Hughes were in the automobile with him and that they were injured. The report also showed Ray Watson and Jim Freeman as witnesses to the accident. The insurance company's adjuster got written statements from Miss Hughes, Watson and Freeman, substantially supporting the facts as related by Roy Leland in reporting the accident. The adjuster made a report to the company's claims office that the cause of the accident was the blowing out of a tire which caused the car to go into a ditch.

On April 19, 1956, Charlotte Mills, suing by her father as next friend, filed a suit

against Roy Leland Mills in the circuit court of Tuscaloosa County, at law, to recover damages for injuries allegedly suffered by her as a result of the accident. Her father, Robert Mills, also filed a separate suit against Roy Leland. The suits were served on Roy Leland on April 21, 1956. On April 24, 1956, the company's adjuster requested Roy Leland to give him a written statement about the facts of the accident. In his statement Roy Leland gave substantially the same information contained in the report of the accident which he had made on February 20, 1956. In the second statement he said: "I was driving about 30 to 35 miles per hour. Just as we passed Mrs. Byrd Hughes' home, over a little hill, the left front tire blew out. The car started sliding and turning for about 50 to 60 yards and went into the ditch on the left side of the road * * * I don't believe the accident could have been prevented. The tires were practically new. But the tire blew out, causing me to lose control." On April 25, 1956, the adjuster made a report to the company's home office. Included was a check list made out by the adjuster on which there was written the following: "This appears to be a nuisance suit. Insured is free from negligence in any degree as I see it."

Sometime between May 19 and June 1, 1956, the adjuster received a telephone call from Robert Mills stating that he had discharged his attorneys in the two suits and asked that the adjuster come talk with him. The adjuster went to Robert Mills' home where he was told that the accident had not been caused by a blowout. Robert Mills offered to settle both suits for $8,000. The adjuster reported this information to the company's home office and later also reported it to the company's Tuscaloosa attorney.

At the request of the company's attorney both Roy R. and Roy Leland Mills went to his office at Tuscaloosa on June 4, 1956. After being informed by the attorney that the tire did not blow out Roy Leland gave another signed statement about the facts of the accident. This last statement reads, in part, as follows: "It had been raining and

the road was wet, but I did not think that I was speeding, for just before the accident occurred at the top of a little hill, when I was at the bottom of the hill, I noticed my speedometer was on approximately 35 miles an hour. And I did not gain any speed as I went up the hill. As I got to the top of the hill for some reason I got out of the ruts in the road and skidded or lost control of the car and went off of the road on my left * * *. As we were leaving, one of the boys suggested that I cut the left front tire and claim that I had a blowout, so I got out of the car, took my knife and cut the left front tire of the car, and then threw my knife away."

On June 13, 1956, the witness Jerry Freeman gave the adjuster an additional statement in which he said he was following Roy Leland's car, which got up to about 60 miles an hour when it got to the top of a hill; that he saw the car sliding sideways and it left the road; that Roy expressed concern about what his daddy would do to him; that someone suggested he could claim that the tire blew out; that Roy took a knife from his pocket and cut the left front tire.

The adjuster also secured an additional statement from Ray Watson on June 13, 1956. Watson stated that Freeman was driving the car in which he was a passenger at about 40 to 45 miles per hour when they came up behind the car driven by Roy; that Freeman slowed his car to about 30 miles an hour; that Roy then speeded up and Freeman picked back up to about 40 to 45 miles an hour; that Roy kept on pulling away until he reached a speed of 55 to 60 miles per hour, at about which time he went over the top of a hill; that when they came over the hill, the Mills car was sliding into the ditch; that after moving the two girls from the Mills car to the Freeman car someone mentioned cutting the tire and claim that it "blowed out"; and that Roy cut the left front tire.

On June 27, 1956, the insurance company wrote a letter to Roy Leland informing him that it was denying him coverage under the policy; that it was instructing its counsel

to withdraw from the two law suits and advising him to employ an attorney at his own expense.

On July 5, 1956, the company brought this declaratory judgment proceeding for a judicial determination as to whether or not it is obligated, under the circumstances, to defend the two suits brought against Roy Leland.

The decree appealed from contains findings "that no written or oral misrepresentations or warranties in connection with proof of loss in connection with said policy made by Roy R. Mills or Roy Leland Mills or any one else were made with actual intent to deceive or increased the risk of loss to complainant so as to in any way prejudice or release complainant from its obligations under said Policy No. A–76535 referred to in the Bill of Complaint herein."

■ Appellees argue for application of the rule that a chancellor's findings of fact from evidence given orally before him are presumed to be correct. But, here, there is no substantial conflict in the evidence bearing upon the material issues presented, that is, whether there was a failure to comply with the notice and cooperation conditions of the policy in some substantial or material respect. There is, therefore, "no real ground for the application of the rule, here prevailing, of the presumption of verity to be indulged as to the finding of the lower court on the evidence offered and noted on the hearing." State v. McKenney, 268 Ala. 165, 169, 105 So.2d 439, 442; State v. Mobile Stove & Pulley Mfg. Co., 255 Ala. 617, 620, 52 So.2d 693; Batson v. Birmingham Trust & Savings Co., 241 Ala. 629, 632, 4 So.2d 307; Esco v. Davidson, 238 Ala. 653, 655, 193 So. 308; Barnes v. Clark, 227 Ala. 651, 653, 151 So. 586, 90 A.L.R. 637; Metropolitan Casualty Ins. Co. of New York v. Blue, 219 Ala. 37, 41, 121 So. 25; Commercial Credit Co. v. Tarwater, 215 Ala. 123, 126, 110 So. 39, 48 A.L.R. 1437.

It is apparent that the trial court based its decree on § 6, Tit. 28, Code 1940, and on a finding that the company was not prejudiced.

We will discuss first the question of prejudice. In the recent case of American Fire & Casualty Company v. Tankersley, Ala., 116 So.2d 579, 581,[1] where there was involved a liability policy containing provisions and conditions identical with those in the policy now before us, it was held to be "entirely immaterial whether the insurance company was prejudiced or not." As there said:

"The cases recognize a distinction between policies in which notice to the insurer of the accident and notice to the insurer of any claim or suit are made a condition precedent to any suit against the company and those policies in which there is no express provision making the insured's failure to give such notice a ground of forfeiture or a condition precedent. It is cases involving policies of the kind last mentioned in which the question of whether the insured is prejudiced by the failure to give notice of the accident is considered.

"The rule established by the great weight of authority is that where, as in the policy involved in this case, notice of the accident and forwarding of any demand, notice, summons or other process are specifically made a condition precedent to any action against the insurer, the failure to give a reasonably timely notice of the accident or of the receipt of any demand, notice, summons or other process will release the insurer from the obligations imposed by the contract, although no prejudice may have resulted. [Cases cited.]"

Section 6, Tit. 28, Code 1940, provides as follows:

"No written or oral misrepresentation, or warranty therein made, in the

[1] 270 Ala. 126.

negotiation of a contract or policy of insurance, or in the application therefor or proof of loss thereunder, shall defeat or void the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss."

Appellees insist that the false statements were made in connection with furnishing "proof of loss" under the policy, were not made "with actual intent to deceive" and did not "increase the risk of loss." Assuming (there being no necessity of deciding) that § 6 is applicable, we see no basis for holding that such statements were not made "with actual intent to deceive." It is apparent—in fact, undisputed—that the false statements were made deliberately as part of a planned scheme of deception. That the plan was devised originally as a protective shield for Roy Leland against what his father might do to him cannot serve to excuse him, as an insured, from complying with the notice requirement of the policy. It should be remembered that the false statements were given to the insurance company, obviously in connection with the insurance policy, and not just to the father. As to the cooperation requirement, there is no contention that it is in anywise controlled by § 6.

 We are clearly of the opinion that there was a failure of substantial compliance (Alabama Farm Bureau Mutual Casualty Ins. Co. v. Teague, 269 Ala. 53, 56–57, 110 So.2d 290; George v. Employers' Liability Assur. Corporation, 219 Ala. 307, 309, 112 So. 175, 72 A.L.R. 1438) with the notice and cooperation conditions of the policy and that the trial court erred in its holding.

The following from Hoffman v. Labutzke, 233 Wis. 365, 374–375, 289 N.W. 652, 656, is equally applicable here:

"* * * If the misstatements of Labutzke were such 'as to tend to lead the insurer to conclude that it was justified in defending the case on the merits, whereas, if the facts * * *

had been disclosed, it might well have concluded to adjust the damages rather than stand the expense of a trial and the chance of an enhanced award because of the assured's conduct' in attempting to shift blame for the accident on an undisclosed and non-existent person, a case of avoidance is made. As said in Buckner v. General Casualty Co., 207 Wis. 303, 309, 241 N.W. 342, co-operation means 'that there shall be a fair, frank, and truthful disclosure of information reasonably demanded by the insurer for the purpose of enabling it to determine whether or not there is a genuine defense.' Clause 6 of the instant policy required that the assured's notice of the accident should contain 'reasonably obtainable information respecting the time, place and circumstances of the accident.' *This implies that the information given should not be knowingly false.* Clause 7 required that the 'insured shall cooperate with the company and, upon the company's request, * * * shall assist * * * in securing and giving evidence.' *This implies that the evidence secured or given shall not be knowingly false.* Both Clauses 6 and 7 are expressly made conditions of the policy, and the 'No action' Clause 8 provides, 'No action shall lie against the Company unless, as a condition precedent thereto, the insured shall have fully complied with all the conditions hereof.' Breach of conditions voids the policy. See Hunt v. Dollar, supra [224 Wis. 48, 53, 271 N.W. 405]. * * *" [Emphasis supplied.]

Accentuating the materiality of the statements as to the cause of the accident is the fact that liability of the insured to the passengers in the car was subject to the "guest statute". Code 1940, Tit. 36, § 95.

In Allegretto v. Oregon Automobile Ins. Co., 140 Or. 538, 13 P.2d 647, 648, the court, in considering the effect of a false statement made by the insured, had this to say:

"* * * It was his contractual obligation to make a full, fair, and complete disclosure of the facts relative to the automobile accident in order to enable the insurance company to determine whether the claim should be contested. Co-operation, within the meaning of the policy, does not mean that the insured is to aid and assist the insurer in the maintenance of a sham defense. It does, however, imply good faith. The insured is not obliged to keep his mouth closed merely because an insurance policy is involved. When he does speak, however, it must be to tell the truth. When the misrepresentation concerns a material matter and substantially affects the rights of the insurer, there is unquestionably a breach of the policy. Seltzer v. Indemnity Ins. Co. of N. Y., 252 N.Y. 330, 169 N.E. 403; Rochon v. Preferred Accident Insurance Company of New York, 114 Conn. 313, 158 A. 815; George v. Employers' Liability Assurance Corporation, 219 Ala. 307, 122 So. 175, 72 A.L.R. 1438; Huddy on Automobiles (9th Ed.) vol. 13–14, § 298; Vance on Insurance (2d Ed.) p. 915. See cases in note 72 A.L.R. page 1453. * * *"

In Fidelity & Casualty Company of New York v. Griffin, D.C.Tex., 178 F.Supp. 678, 680, there was involved a policy containing conditions quite similar to those in the case before us. It was there said:

"* * * Notice of an accident containing a deliberate and willful misstatement as to one of the circumstances of controlling importance, is no notice at all. Implicit in the contractual obligation of the assured to give notice, is the condition that the notice be honest and truthful (Hoffman v. Labutzke, 233 Wis. 365, 289 N.W. 652).

"Similarly, such deceit, continued for a period of seven months following the accident, constitutes a breach of the cooperation clause. Under Texas authorities, such a breach must be substantial and material before the insurer is relieved. * * *"

While the deceit here did not continue as long as it did in Fidelity & Casualty Company of New York v. Griffin, supra, the question of lack of substantial compliance with the notice and cooperation conditions is not one "of mere time lapse." Miller v. Zurich General Accident & Liability Ins. Co., 36 N.J.Super. 288, 115 A.2d 597; Maryland Casualty Co. v. Emery, D.C.N.J., 163 F.Supp. 657.

■ In applying the foregoing principles to the case before us it is to be noted that the false statements were deliberately made, reiterated, and persisted in for about three and a half months and were not changed until Roy Leland was confronted with their falsity by counsel for the company; that the false statements were corroborated by other witnesses to the accident in accordance with the planned deception; that the statements, if true, undoubtedly would have absolved the company from ultimate liability, particularly in view of the "guest statute"; and that the company relied on such false statements in preparing a defense to any claim arising out of the accident, thus lulling it into a sense of false security, to its detriment.

It seems patently clear to us that the deliberate making of and persistence in such false statements constituted a failure to comply with the notice and cooperation conditions in a "substantial and material respect." Alabama Farm Bureau Mutual Casualty Ins. Co. v. Teague, supra [269 Ala. 53, 110 So.2d 293]; George v. Employers' Liability Assur. Corporation, supra.

■ The guardians ad litem who represent the minor appellees have filed motions in this court praying that they be allowed fees for their services in this proceeding. The motions are well taken. Sellers v. Sellers, Ala., 117 So.2d 386, 389; Code 1940, Tit. 7, §§ 165, 180; Equity Rule 112, Code 1940, Tit. 7 Appendix.

The decree appealed from is due to be reversed and the cause remanded with direc-

tions that the trial court enter a decree in accordance with this opinion, including the ascertainment of reasonable solicitors' fees for the guardians ad litem in both courts to be taxed as part of the costs of the proceeding. The costs in both courts will be assessed against appellant.

Reversed and remanded with directions.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.

