J. Wilmer **LEE**, Appellant,

v.

**BITUMINOUS CASUALTY CORPORA-TION**, Appellee.

No. 20239.

United States Court of Appeals
Fifth Circuit.

April 1, 1964.

---

2. See Scott v. Merrill's Estate, 74 Or. 568, 146 P. 99.

Walter B. Henley, Northport, Ala., for appellant.

John D. McQueen, Jr., Tuscaloosa, Ala., James R. Forman, Jr., Birmingham, Ala. (Moore, Thomas, Taliaferro, Forman & Burr, Birmingham, Ala., McQueen & McQueen, Tuscaloosa, Ala., of counsel), for appellee.

Before RIVES and WISDOM,* Circuit Judges.

### WISDOM, Circuit Judge.

This is an action by an insurance company, the Bituminous Casualty Company, for a declaratory judgment against certain insureds, J. Wilmer Lee and the other defendants, a partnership doing business as the Steel Erectors and Rental Company. The facts are undisputed. D. L. Elmore, an employee of a third party, sued the defendants for damages arising from an injury allegedly caused by the defendants' negligence. The question for decision is whether the insurance company is excused from defending Elmore's suit and relieved of its obligations on its policy, because of the insureds' failure for almost a year to notify the insurer of the accident. The trial court, after a careful analysis of the case on the facts and on the law, rendered judgment for the insurer notwithstanding the verdict. We affirm.

Steel Erectors, as a subcontractor, was employed to do certain structural steel work as directed by Reichhold Chemicals Co., Inc. September 23, 1959, or the day before, Steel Erectors placed a steel platform, with a ladder attached, upon a steel cylindrical tank which rested on its side. It had not welded the platform in that position. Elmore, an employee of another subcontractor, leaned a wooden ladder against the side of the tank. As he attempted to step from the wooden ladder onto the platform, the platform moved or turned so as to cause Elmore to jump for safety. He landed on a concrete surface, fracturing both heels. At the time, the defendant, Lee, was on the job as the operator of a crane, but he did not see the accident or hear about it until about a day or two later. However, A. R. Chandler, a real party at interest in the partnership and the husband of one of the nominal partners, was foreman of the employees of Steel Erectors. He testified that he observed Elmore seated on a small concrete curb with one or both of his shoes off, rubbing one or both of his heels. Elmore told him that he was injured when he had to jump off the steel platform. Several hours later Elmore's superintendent also told Chandler how Elmore was hurt. He said that Elmore had been unable to walk to his car, and that Elmore's doctor had advised him that his heels were fractured. From the doctor's office Elmore went to the hospital. He was there for ten days. Thereafter, he could not work until February 1960. He remained under the doctor's care for a considerable period of time.

It is undisputed that none of Lee's partners made any investigation of the accident, or even attempted to interview Elmore.

The first notice of the accident given by the insured to the insurer's agent came about one year after the accident

---

* The third Judge constituting the Court became ill before argument was heard, and the case is decided by a quorum. 28 U.S.C.A. § 46(c).

when the insured delivered to the insurer's agent a copy of the summons and the complaint filed by Elmore in the Circuit Court of Tuscaloosa County, Alabama.

The insurance policy provides:

"Section 9—Notice of Accident.— When an accident occurs, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents *as soon as practicable*. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses. (Emphasis added)

"Section 10—Notice of Claim or Suit.—Coverages A, B & D (Note: Coverage A is bodily injury liability) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

In Section 13 of the policy, provision is made that "no action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of the policy." It should also be noted that among the various obligations imposed on appellee by its insurance policy was the following:

"With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall: (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, *even if such suit is groundless, false or fraudulent;* * * *" (Emphasis added)

There is no Alabama authority construing the phrase "as soon as practicable". The Alabama Supreme Court, in the case of American Fire & Casualty Co. v. Tankersley, 270 Ala. 126, 116 So. 2d 579, held, and the court so charged the jury in this case, that an insurance company need not show prejudice in order to rely on a failure to give the notice required by the policy. The Court of Appeals for the Fifth Circuit, in Young v. Travelers Ins. Co., 119 F.2d 877, speaking through Judge Hutcheson, made the following pronouncement as to the meaning of the words "as soon as practicable":

"The time words in the cause, 'as soon as practicable' are not words of precise and definite import. They are roomy words. They provide for more or less free play. They are in their nature ambulatory and subject under the guiding rule, to the impact of particular facts on particular cases. They do not in terms require immediate notice or notice within a particular number of days. They may not be so construed. They do not even provide for notice 'as soon as possible.' In terms, they require notice 'as soon as practicable' and they must be construed as requiring the notice within a reasonable time under all the circumstances, to effectuate the objects and the purposes of the notice clause."

In Dunn v. Travelers Indemnity Company, 5 Cir. 1941, 123 F.2d 710, the Court affirmed a judgment in favor of the insurer when notice was not given to the insurer by the insured until twenty-two months after the accident. In that case the Court observed:

"No effort was made to interview the injured party, or to discover upon whom he placed the blame for the accident or what he thought the facts to be. He was the only prospective claimant; with him alone rested the decision to sue or not to sue; he was an eyewitness to the affair, and might have seen more, or from a different view, than any of the other witnesses. Surely the exercise of ordinary prudence required an investigation as to what this man

intended to do or claimed with reference to the accident.

"There is no evidence to indicate that Williams was not readily available for interview, or that he was unable or unwilling to discuss the matter with appellant's representative. Nor is it made to appear that his understanding of the facts in the case ever varied from those he alleged in his court action. Had he been questioned, presumably appellant would have been as fully informed then as he was when notice finally was communicated approximately twenty-two months thereafter. The failure to extend the investigation to include this witness rendered the inquiry made so incomplete that no decision based on it could be acceptable to the reasonable and prudent man. The failure to give notice breached the policy and precluded indemnity thereon."

In Yorkshire Indemnity Company v. Roosth and Genecov Production Company, 5 Cir. 1958, 252 F.2d 650, this Court reversed the decision entered by the district court adverse to the insurer. The insured's oil derrick had crashed and injured seriously an employee of an independent drilling contractor. The insured knew of the accident almost immediately but did not report it to the insurer for about two years. The insured made only a superficial investigation of the accident, not getting in touch with either the injured employee or his employer's compensation insurer. This Court said:

"[T]o protect the Insurer's rightful interest, the Assured's investigation must comprehend the likelihood both of claims and liability. If a claim will be made or, whether made or not, if there is a reasonable probability of liability, then the notice must be given.

"We echo what the Texas Courts have so often said. Prompt notice of an accident is a reasonable requirement. Insurance companies under the pressure both of traditional schemes of statutory penalties and the general adverse psychological climate in litigation are expected to perform fully and quickly. To enable them to fill the law's demands, they must have notice of occurrences likely to give rise to claims under the policy. Prompt and thorough investigation by competent, trained persons is essential. The longer it is postponed the greater the likelihood of the loss of valuable information or available evidence. And since a liability policy, as does this one, provides defense as well as indemnity, which in turn requires the exercise of due care or good faith in the settlement or claims within the monetary policy limits, the Insurer, for the protection of itself against future 'excess' claims and for the protection of the Assured against risks inherent in the necessity of obtaining full protection through any such uncertain claims, is entitled to the earliest practicable knowledge of the case.

"If a full, adequate and fair investigation would indicate a reasonable likelihood of legal liability, the Assured who fails to report it on the mistaken, even though reasonable, belief, that the claimant will not assert a claim, must bear the consequences. To escape them, he must establish the contrary."

Here, the claimant informed Chandler, the man who was in charge of the work for the defendants that he had suffered an injury. Within a very short time thereafter Chandler learned that Elmore had gone to the doctor and had been hospitalized with two fractured heels. The same information reached the defendant, Lee, within a few days. Yet neither made any attempt to interview Elmore to determine whether he would assert a claim.

The trial court held that the plaintiff was entitled to a directed verdict and a judgment declaring that it was under no obligation to defend the suit instituted against defendant or to pay any judg-

ment rendered therein. The trial court pointed out:

"Even a casual investigation would have revealed that they were involved and that the injuries were not trivial. Plaintiff was obligated to defend any suit filed against the defendants even though the suit was groundless. If the plaintiff had been given timely notice as required by the policy, it could have easily determined the facts with respect to the accident, the extent to which its insured were involved, the seriousness of the injuries, and whether or not a claim for damages would likely or probably be made against the insured. It was deprived of such opportunity when the defendants failed to give notice."

We are in complete agreement with the district court. In addition, we find that the district court did not err in denying Elmore's motion for leave to intervene as a defendant. His interest was not prejudiced or jeopardized by the denial of the motion to intervene

The judgment is affirmed.