**UNITED STATES FIRE INSURANCE COMPANY, Appellant,**

v.

**Daisy WATTS and Travis Cooper, Jointly and Severally, Appellees.**

**No. 22942.**

United States Court of Appeals
Fifth Circuit.

Dec. 28, 1966.

Paul W. Brock, Mobile, Ala., Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., of counsel, for appellant.

Samuel L. Stockman, Benjamin H. Kilborn, Kilborn, Darby & Kilborn, Mobile, Ala., for appellees.

Before RIVES, GEWIN and GODBOLD, Circuit Judges.

RIVES, Circuit Judge:

Daisy Watts brought in an Alabama court an action against Travis Cooper for damages arising out of an automobile accident. After a three-day trial, Mrs. Watts recovered a $30,000 judgment, which has been affirmed by the Supreme Court of Alabama.[1]

The instant appeal before this Court involves a suit, under the Declaratory Judgment Act,[2] by the United States Fire Insurance Company (hereinafter Insurance Company) asking for a declaration that the Insurance Company is not obligated to pay the $30,000 judgment rendered against Cooper,[3] and that it is not obligated to proceed further with Cooper's defense in the state proceedings on the ground that Cooper had materially breached the assistance and cooperation clause of the policy issued by the Insurance Company. The district court found against the Insurance Company and awarded judgment to Daisy Watts for $30,000, holding *inter alia* that misrepresentations of the insured, Travis Cooper, as to his whereabouts and conduct prior to the accident did not constitute a material breach of the cooperation clause of the insurance policy and, furthermore, that the Insurance Company was not prejudiced by any of Cooper's misrepresentations. The Insurance Company brought this appeal contending that the trial court erred in failing to hold that

a) the Insurance Compay was not liable because compliance by Cooper with the cooperation clause was an expressed condition precedent to any action or obligation on the part of the Insurance Company;

b) the misrepresentation by Cooper breached the cooperation clause;

c) there need be no showing that the misrepresentation by Cooper prejudiced the Insurance Company; and

d) the Insurance Company was, in fact, prejudiced by Cooper's misrepresentations.

---

1. 280 Ala. 236, 191 So.2d 519 (Oct. 27, 1966).

2. 28 U.S.C.A. § 2201 et seq.

3. United States Fire Insurance Company issued to the employers of Travis Cooper an automobile liability policy which contained an omnibus clause stipulated by the parties to cover Cooper.

Preparatory to discussing these contentions, we set forth the pertinent events that transpired prior to this declaratory action.

After finishing a business transaction with Daisy Watts at her home,[4] Cooper offered to take her to her place of employment. On the way, they stopped at a tavern known as the Tarpon Lounge. Both Cooper and Mrs. Watts drank beer, and according to eyewitnesses Cooper became inebriated. Leaving the tavern, Cooper, accompanied by Mrs. Watts, proceeded a short distance down the highway where his truck hit a bridge abutment, resulting in serious injuries to Mrs. Watts.

Two days after the accident,[5] the Insurance Company's adjuster, A. N. Beville, visited Cooper in order to obtain a statement. At that time and on several occasions thereafter, Cooper asserted that he had nothing to drink "prior to the accident." During the course of his investigation, Beville learned from James Ready and Tony Carlisle,[6] both of whom were at the scene of the accident shortly after it occurred, that Cooper had the odor of alcohol on him. Confronted with this evidence, Cooper reiterated his earlier position that he had nothing to drink. Several months after the accident, Daisy Watts testified on deposition that she and Cooper had gone to the Tarpon Lounge just before the accident and that Travis Cooper had four or five beers.[7] Cooper in his own deposition [8] claimed that he did not stop at the tavern or drink any beer. The Insurance Company made several attempts to find persons who may have seen Cooper at the Tarpon Lounge, but was unsuccessful.[9]

On the day prior to the trial date, Cooper confessed to the Insurance Company's attorney that he had, in fact, been at the tavern where he had two beers. The attorney advised Cooper that his misstatements during the eighteen-month period could be grounds for canceling his coverage under the policy. The Insurance Company offered, however, to defend against the tort action if Cooper executed a nonwaiver agreement and Cooper signed such an agreement.

Daisy Watts' case went to trial [10] with her attorney strongly emphasizing to the jury in his opening statement that Cooper had lied under oath when making his deposition.[11]

Cooper's testimony at trial maintained "that the accident occurred while he was driving a pick-up truck at approximately thirty-five miles per hour, was blinded by lights of oncoming traffic, which caused him to pull to the right, hit a defective shoulder, lose control of the truck and strike a concrete abutment." [12]

---

4. Cooper had gone to Mrs. Watts' house to discuss concreting her driveway.

5. The accident occurred on October 12, 1962.

6. On March 11, 1963.

7. This was the first time that any reference to the Tarpon Lounge was made to the Insurance Company.

8. Taken on August 1, 1963.

9. The adjuster, A. N. Beville, took Cooper to the Tarpon Lounge, but the waitress, a bartender and the owners, Mr. and Mrs. McDaniels, did not recognize Cooper. During the trial the attorneys for Daisy Watts produced Earl Stout, who was one of the ·bartenders in the Tarpon Lounge and had served Travis Cooper and Daisy Watts. Shortly after the day Cooper had patronized the Tarpon Lounge, Stout moved to Birmingham, Alabama, and until he was subpoenaed by Daisy Watts, the Insurance Company claims it did not know he existed. Stout was first questioned by the Insurance Company's adjuster on the morning of the trial.

10. In April 1964.

11. "We are going to show that when he was sworn to tell the truth he didn't tell it, and I submit that he either lied when he testified on the deposition or he is going to lie today, and if he will lie about one thing he will lie about the whole * * *."

12. District Court's Finding of Fact No. 5.

During cross-examination of Cooper, Daisy Watts' attorney confronted Cooper with his false swearing:

"Q. And you remember * * *, do you not, sir, being sworn to tell the truth, the whole truth and nothing but the truth, so help you God, before you answered any questions on that deposition?

"A. Well, I do, but it wasn't in court.

"Q. The same oath you took today. before this case started?

*   *   *   *   *   *

"A. Yes.

*   *   *   *   *   *

"Q. Do you remember here on page 17 my question: 'And you didn't stop at any time after you got on Moffat Road until the time that you hit the bridge?'; what was your answer to that?

"A. 'No, sir.'

"Q. Do you remember that?

"A. Yes, sir.

*   *   *   *   *   *

"Q. Do you remember me asking you back then, specifically: 'Did you stop at any taverns on the way?'?

"A. Yes, sir.

"Q. And what did you say?

"A. 'No, sir.'

*   *   *   *   *   *

"Q. Do you remember denying that you even knew where it was?

"A. Really, I never stopped until that night and Daisy showed me where to stop, she said she had stopped there several times, and I told her she would have to show me where to stop.

"Q. And you remember me asking you again, telling you the Tarpon Lounge was just west of the bridge you hit? 'You didn't stop there?', and what did you say to that?

"A. 'No, sir.'

"Q. You denied stopping there again. Remember me asking you, page 18, 'Are you positive of that?', do you remember me asking you that, if you were positive that you didn't stop there?

"A. Yes, sir.

"Q. You remember me asking you again, 'You didn't go in the Tarpon Lounge and have any beer?', what did you answer to that?

"A. 'No, sir.'

"Q. Then do you remember me asking you further, 'Did you stop for beer or any beverages any places?' on that occasion, do you remember that, sir?

"A. Yes, sir.

"Q. What did you answer to that?

"A. 'No, sir.'

"Q. And do you remember me asking you if you had anything at all to drink that night?

"A. (Silence)."

Cooper, when confessing the truth to the Insurance Company's attorney, said "it worried my conscience. I knew court was coming up and I just decided it was best to tell the truth." His excuse for lying was: "I said what I said because I was afraid my wife would find out I was going around with this lady, I was afraid my bosses would be on me for using the truck for my own business when I wasn't supposed to."

The fact that perjury was committed was driven home to the jury when Daisy Watts' attorney closed his argument, saying:

"And I submit to you who has lied like this man has; acted like he with that woman laying out there in that condition. I submit, gentlemen, that we are entitled not only to what our damages are but I ask you for the entire amount sued for, $100,000.00."

After the jury returned a verdict for $30,000 for Daisy Watts, the Insurance Company notified Cooper that it was filing a declaratory judgment action, but would still file an appeal in the tort suit if another nonwaiver agreement was

signed.[13] The agreement was signed by Cooper, thereby reserving for the Insurance Company any rights it might have.

■ This being a diversity case,[14] we turn to the law of Alabama to test the Insurance Company's contentions.[15] The Insurance Company asserts that under Alabama law Cooper's failure to comply with the cooperation clause *ipso facto* denies him coverage. The insurance policy specifically provided that compliance with all terms of the policy was a condition precedent to any action against the company:

"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy * * *."

The cooperation clause read in part as follows:

"The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits."

The Insurance Company alleges that the effect of these two clauses is to absolve it of any liability, whether or not it was prejudiced by Cooper's false statements. Alabama cases indicate that where cooperation is a condition precedent to an action against the insurance company, there need be no showing of prejudice.[16] In Alabama Farm Bureau Mutual Cas. Ins. Co. v. Mills, supra note 16, the Supreme Court of Alabama distinguishes between policies, such as the one before us, in which compliance with the terms of the policy is expressly made a condition precedent to any action against the company, and policies containing no such provision, by quoting from *Tankersley,* supra note 16, 116 So. 2d at 582:

" 'The rule established by the great weight of authority is that where, as in the policy involved in this case, notice of the accident and forwarding of any demand, notice, summons or other process are specifically made a condition precedent to any action against the insurer, the failure to give a reasonably timely notice of the accident or of the receipt of any demand, notice, summons or other process will release the insurer from the obligations imposed by the contract, *although no prejudice* may have resulted * * *.' " (Emphasis added.) 123 So.2d at 142.

The *Mills* court went on to quote with approval cases holding that failure to comply with the *cooperation clause* is a breach of the policy:

"In Allegretto v. Oregon Automobile Ins. Co., 140 Or. 538, 13 P.2d 647, 648, the court, in considering the effect of a false statement made by the insured, had this to say:

" '* * * It was his contractual obligation to make a full, fair, and complete disclosure of the facts relative to the automobile accident in order to enable the insurance company to determine whether the claim should be contested. Co-operation, within the meaning of the policy, does not mean that the insured is to aid and assist the insurer in the maintenance of a sham defense. It does, however, imply good faith.

13. The Insurance Company advised Cooper that he could obtain other counsel to represent him before the Alabama Supreme Court, but Cooper elected to make use of the services of the Insurance Company's attorney.

14. Insurance Company was incorporated in New York, with its principal place of business in the city and state of New York. Daisy Watts and Travis Cooper, the joint defendants in the declaratory

judgment action, were resident citizens of Alabama.

15. Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477; Van Dusen v. Barrack, 1964, 376 U.S. 612, 628, 84 S.Ct. 805, 11 L.Ed.2d 945.

16. Alabama Farm Bureau Mutual Cas. Ins. Co. v. Mills, 271 Ala. 192, 123 So.2d 138; American Fire & Casualty Co. v. Tankersley, 270 Ala. 126, 116 So.2d 579.

The insured is not obligated to keep his mouth closed merely because an insurance policy is involved. When he does speak, however, it must be to tell the truth. When the misrepresentation concerns a material matter and substantially affects the rights of the insurer, there is unquestionably a breach of the policy. Seltzer v. Indemnity Ins. Co. of N. Y., 252 N.Y. 330, 169 N.E. 403; Rochon v. Preferred Accident Insurance Company of New York, 114 Conn. 313, 158 A. 815; George v. Employers' Liability Assurance Corporation, 219 Ala. 307, 122 So. 175, 72 A.L.R. 1438; Huddy on Automobiles (9th Ed.) vol. 13–14, § 298; Vance on Insurance (2d Ed.) p. 915. See cases in Note 72 A.L.R. page 1453. * * *.' " 123 So.2d at p. 143.

The court concluded in language most pertinent to this case:

"It seems patently clear to us that the deliberate making of and persistence in such false statements constituted a failure to comply with the notice and cooperation conditions in a 'substantial and material respect.' Alabama Farm Bureau Mutual Casualty Ins. Co. v. Teague, supra [269 Ala. 53, 110 So.2d 290, 293]; George v. Employers' Liability Assur. Corporation, supra." 123 So.2d at p. 144.

■ To properly and thoroughly investigate a claim under its policy, an insurance company needs and is entitled to "the earliest practicable knowledge of the case." Yorkshire Indemnity Co. v. Roosth & Genecov Production Co., 5 Cir. 1958, 252 F.2d 650; cf. General Acc. Fire & Life Assur. Corp. v. Rinnert, 5 Cir. 1948, 170 F.2d 440. Obviously, the condi-

tion precedent clause coupled with the cooperation requirement clause aims at promptly furnished, truthful information concerning the circumstances surrounding a claim for coverage. We cannot ignore the intent of these contract clauses, especially where the language is unambiguously clear.[17] The Alabama law appears to be settled that if a liability policy expressly makes the insured's compliance with all terms of the policy a condition precedent to any action against the company, no recovery can be had where compliance is absent.[18]

■■ We are aware that for the cooperation clause to be breached, the misrepresentation must be material.[19] Because of Cooper's misstatements, the Insurance Company was deprived of the opportunity of conducting an investigation at the Tarpon Lounge before Earl Stout, a material witness, terminated his employment and left town. It was deprived of the opportunity of conducting a defense of the personal injury action against Cooper in an atmosphere free from any bias caused by Cooper's admitted perjury. Though prejudice need not be shown, undoubtedly the Insurance Company was greatly handicapped, and probably defenseless, because of Cooper's misconduct for eighteen months. Surely a misrepresentation that not only handicaps an insurer's investigation and delays preparation, but also supplies ammunition for opposing counsel to use at trial, is sufficiently material to be a breach of a cooperation clause.

The appellees, Daisy Watts and Travis Cooper, contend that for a misrepresentation to breach the cooperation clause, it must go to a material and substantial fact. The appellees assert that what Cooper was doing *prior* to the accident is

17. See Loveman, Joseph & Loeb v. New Amsterdam Cas. Co., 233 Ala. 518, 173 So. 7; 13 Appleman, Insurance Practice & Law 7385.

18. Cf. Lee v. Bituminous Casualty Corporation, 5 Cir. 1964, 330 F.2d 514; 8 Appleman, Insurance Law & Practice, § 4817; 18 A.L.R.2d 452.

19. Alabama Farm Bureau Mutual Cas. Ins. Co. v. Mills, 271 Ala. 192, 123 So.2d 138; Alabama Farm Bureau Mutual Casualty Ins. Co. v. Cofield, 274 Ala. 299, 148 So. 2d 226; General Acc. Fire & Life Assur. Corp. v. Rinnert, 5 Cir. 1948, 170 F.2d 440.

immaterial on the question of whether or not on the occasion complained of he was guilty of wanton misconduct.[20] The cases cited by the appellees do not support their theory that Cooper's actions prior to the accident were immaterial.[21]

The appellees also rely on the theory that there was no prejudice and, therefore, the misrepresentation was not material. They contend that the Insurance Company could have discovered that Cooper was lying, and even if it could not, that by the time of the trial, it was aware that Cooper had been drinking. While under the policy contract a showing of prejudice was not required, we are convinced that the Insurance Company was prejudiced by Cooper's continuous disregard for the truth.[22]

The district court held that, "when the insurer has in its possession prior to trial facts from which it can make decision to settle, if it sees fit to settle, and defend, if it sees fit to defend, so as not to be caught by surprise in the trial of the case, then a false statement which has been withdrawn or corrected does not as a matter of law void the policy for non-cooperation." The cases [23] cited by the district court to support this conclusion of law are not dispositive of Alabama law, which we are bound to follow.[24]

This Court is in as good a position as was the district court to make inferences from undisputed facts and to apply the appropriate law to the case. The judgment is reversed and the cause remanded with directions to enter judgment consistent with this opinion.

Reversed and remanded.

---

20. Willful or wanton misconduct is required in Alabama to hold a driver liable for injury to a guest. Tit. 36, § 95, Code of Alabama (1958).

21. Alabama Farm Bureau Mutual Cas. Ins. Co. v. Cofield, 274 Ala. 299, 148 So.2d 226, involved false statements by an insured boy as to his drag racing prior to an accident at which time he was not drag racing. The misstatements in that case were held not to be material. In this case, we are concerned with drinking alcoholic beverages, the effects of which were allegedly present at the time of the accident.

22. We note that the appellees fail to cite cases which show that there would be no prejudice where the trial tactics of a plaintiff in a tort case capitalized on the prior misrepresentations of the defendant.

Western Casualty & Surety Co. v. Barnhart, 8 Cir. 1963, 312 F.2d 149, relied on by appellees, considers Missouri law and is not applicable to this case.

23. Standard Accident Ins. Co. of Detroit, Mich. v. Winget, 9 Cir. 1952, 197 F.2d 97, 34 A.L.R.2d 264; General Acc. Fire & Life Assur. Corp. v. Rinnert, 5 Cir. 1948, 170 F.2d 440.

24. The *Rinnert* case, 170 F.2d 440, was decided prior to Alabama Farm Bureau Mutual Cas. Ins. Co. v. Mills, 271 Ala. 192, 123 So.2d 138, which implied that a retraction of false statements did not prevent a finding that a cooperation clause was breached. We intimated in *Rinnert* that persistent adherence to misrepresentation might justify denial of coverage.
The *Winget* decision, 197 F.2d 97, was decided on the basis of California law.